UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTEM SURJKO, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>BMW AG, BMW NORTH AMERICA, LLC, VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI AG, AUDI OF AMERICA, INC., AUDI OF AMERICA, LLC, DR. ING. H.C. F. PORSCHE AG, PORSCHE CARS OF NORTH AMERICA, INC., BENTLEY MOTORS LIMITED, DAIMLER AG, MERCEDES-BENZ USA, and MERCEDES-BENZ US INTERNATIONAL,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

I.      NATURE OF ACTION ................................................................................1

II.     JURISDICTION AND VENUE ..................................................................3

III.    PARTIES .....................................................................................................5

        A.      Plaintiff ...........................................................................................5

        B.      Defendants ......................................................................................6

        1.      The Volkswagen Defendants ..........................................................6

        2.      The Audi Defendants ......................................................................6

        3.      The Porsche Defendants ..................................................................7

        4.      Bentley .............................................................................................7

        5.      Daimler AG ......................................................................................8

        C.      The Mercedes Defendants..............................................................8

        D.      The BMW Defendants ....................................................................9

IV.     AGENTS AND CO-CONSPIRATORS .....................................................9

V.      FACTUAL ALLEGATIONS .....................................................................9

        A.      The German Premium Vehicle Conspiracy ...................................9

        B.      Government Investigations into Price-Fixing in the German Premium Vehicles
                Industry .........................................................................................13

        C.      Defendants are Recidivist Violators of U.S Laws .......................14

VI.     THE STATUTES OF LIMITATIONS DOES NOT BAR PLAINTIFF'S CLAIMS .......15

        A.      Plaintiff Did Not and Could Not Have Discovered Defendants' Anticompetitive
                Conduct .........................................................................................15

        B.      Defendants Actively Concealed The Conspiracy .........................16

VII.    CLASS ACTION ALLEGATIONS ..........................................................17

VIII.    ANTITRUST INJURY ........................................................................................23

IX.    VIOLATION OF THE SHERMAN ACT ..........................................................25

X.    VIOLATIONS OF STATE ANTITRUST LAWS ..............................................26

XI.    VIOLATIONS OF STATE CONSUMER PROTECTION LAWS ...................52

XII.    FIFTY-FIRST CLAIM FOR RELIEF UNJUST ENRICHMENT ...................80

XIII.    REQUEST FOR RELIEF ..................................................................................80

XIV.    JURY TRIAL DEMANDED ..............................................................................82

Artem Surjko on behalf of himself and all others similarly situated (the "Classes" as defined below), brings this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection, and unjust enrichment laws, and alleges as follows:

## I.    NATURE OF ACTION

1.    This lawsuit involves one of the most extensive and brazen antitrust conspiracies ever. For nearly 30 years, defendants Volkswagen AG, Volkswagen Group of America, Inc. (collectively *Volkswagen*), Audi AG, Audi of America Inc., Audi of America, LLC (collectively *Audi*), Dr. Ing. h.c.F. Porsche AG, Porsche Cars of North America, Inc. (collectively *Porsche*), Bentley Motors Limited (*Bentley*), Daimler Aktiengesellschaft (*Daimler AG*), Mercedes-Benz US International, Mercedes-Benz USA, (collectively *Mercedes*), BMW AG, and BMW North America, LLC (collectively *BMW*)(collectively Volkswagen, Audi, Porsche, Bentley, Mercedes will be referred to as *Defendants*), companies who are supposed to be competing with one another, engaged in an almost unfathomable number of meetings, communications, and agreements, coordinating virtually every aspect of their manufacture and sale of German Premium Vehicles (as defined below). As the German publication *Der Spiegel* recently reported, "[t]he conclusion is that Daimler, BMW, Audi, Porsche and Volkswagen often no longer compete with one another. Instead, they secretly cooperate, very closely, in fact, in the same way one would normally expect of the subsidiaries of a single company to work together, as something like a "German Cars Inc." -- or a cartel."[1]

---

[1] http://www.spiegel.de/international/germany/the-cartel-collusion-between-germany-s-biggest-carmakers-a-1159471.html (last visited July 28, 2017).

2.    *German Premium Vehicle* as used herein refers to vehicles sold by the Defendants under the following five brands: Mercedes-Benz, Porsche, Audi, BMW, and Bentley.[2]

3.    The conspiracy at issue is both long-running and vast; Volkswagen admitted to authorities that in the last five years alone, Defendants met and conspired through at least 60 working groups, and 1,000 meetings, involving more than 200 employees.

4.    In a document dated July 4, 2016, Volkswagen submitted a document to the European Commission (*EC*) declaring its "participation in suspected cartel infringements." According to this document, Volkswagen stated that Daimler, BMW, Volkswagen, Audi and Porsche have coordinated matters relating to the development of their vehicles, costs, suppliers and markets "for many years -- at least since the 1990s and to this day." Further, in its July 2016 submission, Volkswagen stated this behavior was likely "in violation of cartel law." The EC has launched an investigation of the Defendants concerning potential anticompetitive activities. Volkswagen has also reported the same information to the German Federal Cartel office Bundeskartellamt.

5.    Volkswagen and Daimler have also reportedly admitted to participating in the unlawful cartel and applied for leniency from the EC in exchange for their cooperation in the probe.

6.    Commentators believe that this conspiracy is likely the "one of the biggest cartel cases in German industrial history."[3] The conspiracy was so extensive (in both duration and

---

[2]    Defendant Daimler owns the Mercedes-Benz brand. Volkswagen owns the Audi, Porsche and Bentley brands.

[3]    http://www.spiegel.de/international/germany/the-cartel-collusion-between-germany-s-biggest-carmakers-a-1159471.html (last visited July 28, 2017).

scope) because German "industry executives long viewed violations of competition law as

harmless rule violations, on a par with parking tickets."[4]

7.     As a result of Defendants' overarching conspiracy, Plaintiff and the Classes paid

for German Premium Vehicles at unlawfully inflated prices.

8.     The business activities of the Defendants substantially affected interstate trade

and commerce in the United States and caused antitrust injury to Plaintiff and members of the

Classes in the United States.

9.     Plaintiff seeks to represent all persons and entities who from at least as early as

January 1, 1990 through such time as the anticompetitive effects of the Defendants' conduct

ceased (*Class Period*) purchased or leased a German Premium Vehicle in the United States,

which was manufactured or sold by any of the Defendants.

## II.    JURISDICTION AND VENUE

10.     Plaintiff brings this state law class action on behalf of all the Classes to recover

actual and/or compensatory damages, double and treble damages as permitted, pre- and post-

judgment interest, costs, and attorneys' fees for the injury caused by Defendants' conduct alleged

in this Complaint. Plaintiff seeks damages in excess of $5,000,000. Plaintiff brings this action

under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against

Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). This Court has subject

matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15

U.S.C. §§ 15(a) and 26.

11.     Plaintiff also asserts claims for actual and exemplary damages and injunctive

relief pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to

---

[4]    *Id.*

- 3 -

obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws. Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses under federal and state laws. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some defendants; and (ii) Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

12.     Venue is proper in this District pursuant to Section 12 of the Clayton Act(15 U.S.C. § 22), and 28 U.S.C. §§ 1391(b),(c), and (d), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

13.     This Court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of their subsidiaries, inter alia: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of German Premium Vehicles in the United States, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d) were engaged in an illegal conspiracy in restraint of trade that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United

States, including in this District, and have purposefully availed themselves of the laws of the United States.

14.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

15.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

16.     German Premium Vehicles manufactured abroad by Defendants and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury in the United States.

17.     Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes. Defendants, directly and through their agents, engaged in anticompetitive activities affecting all states, as they coordinate activities related to vehicle development of Defendants' vehicles, costs, suppliers and markets.

18.     Defendants' conspiracy and anticompetitive conduct described herein caused persons in the United States who purchased or leased a new German Premium Vehicles to pay unlawfully inflated prices.

### III.     PARTIES

**A.     Plaintiff**

19.     Plaintiff Artem Surjko is a New York resident who purchased or leased one or more German Premium Vehicles from Defendants at unlawfully inflated prices during the relevant Class Period.

- 5 -

B.    **Defendants**

20.    When Plaintiff refers to a corporate family or companies by a single name in the

Complaint, they are alleging that one or more employees or agents of entities within that

corporate family engaged in conspiratorial acts on behalf of every company in that family. The

individual participants in the conspiratorial acts did not always know the corporate affiliation of

their counterparts, nor did they distinguish between the entities within a corporate family. The

individual participants entered into agreements on behalf of their respective corporate families.

As a result, those agents represented the entire corporate family with respect to such conduct,

and the corporate family was party to the agreements that those agents reached.

1.    **The Volkswagen Defendants**

21.    Defendant Volkswagen AG is a German corporation with its principal place of

business in Wolfsburg, Germany. Volkswagen AG is the parent company of Volkswagen Group

of America, Inc., Audi AG, Porsche AG, and Bentley. In 2016, Volkswagen AG was the largest

auto manufacturer in the world. Volkswagen AG's sales revenue for 2016 was over €217 billion

dollars, with sales revenues in North America of approximately €35.5 billion.

22.    Defendant Volkswagen Group of America, Inc. is incorporated in New Jersey,

and does business in all fifty states and the District of Columbia, with its principal place of

business in Herndon, Virginia. Volkswagen Group of America, Inc. advertises, markets, and sells

Volkswagen vehicles through the United States, including in this district during the Class Period.

2.    **The Audi Defendants**

23.    Defendant Audi AG is a German corporation with its principal place of business

in Ingolstadt, Germany. Audi AG is the parent company of Audi of America, Inc. and Audi of

America, LLC and also is a wholly owned subsidiary of Volkswagen AG. Audi AG designs,

develops, manufactures, and sells the German Premium Vehicles at issue that were purchased

- 6 -

throughout the United States, including this district during the Class Period. Audi AG directs the activities of its subsidiaries which act as its agents selling German Premium Vehicles throughout the United States.

24.    Defendant Audi of America, Inc. is incorporated in New Jersey, and does business in all fifty states and the District of Columbia, with its principal place of business in Herndon, Virginia.

25.    Defendant Audi of America, LLC is incorporated in Delaware, and does business in all fifty states and the District of Columbia, with its principal place of business in Herndon, Virginia.

### 3.    The Porsche Defendants

26.    Defendant Dr. Ing. h.c. F. Porsche AG is a German corporation with its principal place of business located in Stuttgart, Germany. Porsche AG is a wholly-owned subsidiary of Volkswagen AG. Porsche AG designs, develops, manufactures, and sells the German Premium Vehicles at issue that were purchased throughout the United States, including this district during the Class Period.

27.    Defendant Porsche Cars North America, Inc. is incorporated in Delaware with its principal place of business in Georgia. Porsche Cars North America, Inc. is a wholly-owned U.S. subsidiary of Porsche AG and advertises, markets, and sells German Luxury Vehicles in all fifty states. Porsche Cars North America, Inc. maintains a network of 189 dealers throughout the United States.

### 4.    Bentley

28.    Bentley Motors Limited Company ("Bentley") is organized under the laws of the United Kingdom. Bentley has been a subsidiary of Volkswagen AG since 1998. In 2012, Bentley

moved its U.S. headquarters to the offices of Volkswagen Group of America in Herndon, Virginia. Prior to this change, Bentley was headquartered in Boston, Massachusetts.

   **5.     Daimler AG**

   29.     Defendant Daimler Aktiengesellschaft ("Daimler AG") is a foreign corporation headquartered in Stuttgart, Baden-Württemberg, Germany. Daimler AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes the German Premium Vehicles at issue that were purchased throughout the United States, including this district during the Class Period. Daimler AG is the parent company of Mercedes-Benz USA, LLC and controls this subsidiary which acts as the sole distributor for Mercedes-Benz vehicles in the United States. Daimler AG owns 100% of the capital share in Mercedes-Benz USA, LLC. In 2016, Daimler had global revenues of €153.2 billion, with approximately €89 billion of revenues derived from Mercedes Benz premium vehicles. Daimler's 2016 revenue derived from U.S. sales totaled approximately €39.1 billion.

**C.     The Mercedes Defendants**

   30.     Defendant Mercedes-Benz USA, LLC is a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia.[5] Mercedes-Benz USA LLC operates a regional sales office, a parts distribution center, and a customer service center in New Jersey. Mercedes designs, manufactures, markets, distributes and sells the German Premium Vehicles at issue that were purchased throughout the United States, including this district during the Class Period.

---

   [5]     Prior to July 2015, Mercedes-Benz USA, LLC's principal place of businesses was Montvale, New Jersey.

31.     Defendant Mercedes-Benz U.S. International, Inc. is a corporation organized and existing under the laws of Alabama, with its principal place of business in Vance, Alabama. Mercedes-Benz U.S. International, Inc. is a wholly-owned subsidiary of Daimler AG.

**D.     The BMW Defendants**

32.     Defendant Bayerische Motoren Werke AG (*BMW AG*) is a German holding company and vehicle manufacturer. BMW AG is headquartered in Germany. BMW AG, together with its subsidiaries, develops, manufactures, and sells cars and motorcycles worldwide, including the German Premium Vehicles at issue that were purchased throughout the United States, including this district during the Class Period. In 2016, BMW AG had global revenues of approximately €94.1 billion, with €86 billion derived from its sale of automobiles. The United States was responsible for approximately €16 billion of BMW AG's €94.1 billion in revenues in 2016.

33.     Defendant BMW North America, LLC is a Delaware limited liability corporation with its principal place of business in Woodcliff Lake, New Jersey. BMW North America is the United States importer of BMW vehicles.

## IV.     AGENTS AND CO-CONSPIRATORS

34.     Each Defendant acted as the principal of or agent for the other Defendant with respect to the acts, violations, and common course of conduct alleged herein.

## V.     FACTUAL ALLEGATIONS

**A.     The German Premium Vehicle Conspiracy**

35.     Since at least the 1990s, Defendants have shared commercially-sensitive information and reached unlawful agreements regarding German Luxury Vehicle technology, including related to costs, suppliers, market, emissions equipment and other competitive attributes.

- 9 -

36.     This conspiracy has prompted competition authorities from multiple jurisdictions, including the United States, to open investigations into Defendants' unlawful conduct.

37.     In just the last five years alone, Defendants shared competitively sensitive information through 60 working groups and over 1,000 meetings. These contacts involved at least 200 employees. The Defendants' employees who participated in these meetings were assigned to working groups and sub-working groups, classified according to the following development areas: "engine," "car body," "chassis," "electric/electronic" and "total vehicle."[6] Because five auto brands were involved, the groups were known internally as the "groups of five." Some commentators have noted that, "[s]ometimes the cooperation among Daimler, BMW, Audi, Porsche and Volkswagen worked more effectively than cooperation among various departments within a company."

38.     As Volkswagen noted in its July 2016 submission to the cartel authorities, there was an "exchange of internal, competitively sensitive technical data" among the Defendants. Further, Volkswagen stated the Defendants had jointly established "technical standards" and had agreed to use "only certain technical solutions" in new vehicles. For example, one area in which the Defendants engaged in extensive cooperation was with respect to their respective convertible models. Representatives from the Defendants who were part of a "working group for mechanical attachments," engaged in numerous meetings to determine the maximum speed at which a driver could open or close the top.  According to written minutes of one of the meetings which took place in Bad Kissingen, Germany, the Defendants agreed that there would be "[n]o arms race when it comes to speeds." The minutes of the meeting related that arguments against an "arms

---

    [6]    http://www.spiegel.de/international/germany/the-cartel-collusion-between-germany-s-biggest-carmakers-a-1159471.html (last visited July 28, 2017).

- 10 -

race," were "costs, weight, increasing technological risk and crash relevance." The result of that meeting is that the soft tops on the convertibles sold by Daimler, BMW, Audi, Porsche and Volkswagen can only be opened and closed at speeds of up to 50 kilometers per hour.

39.    As part of Defendants overarching conspiracy in the German Premium Vehicles market, Defendants coordinated and agreed upon their emissions control technology in their diesel vehicles. AdBlue is an aqueous reductant agent that is used with a Selective Catalytic Reduction (*SCR*) system to clean the emissions disseminated from diesel vehicles. AdBlue tanks are also called Diesel Exhaust Fluid (*DEF*). Urea is a component of DEF and AdBlue. Specifically, 32.5% of high grade environmental urea and 67.5% deionized water make up what is known as DEF or AdBlue. DEF or AdBlue along with the SCR system enables auto-manufactures to remain compliant with emissions standards.

40.    In September 2008, Defendants all agreed to use small eight-liter AdBlue tanks to reduce costs.

41.    In 2010, Defendants unlawfully agreed to increase the size of AdBlue tanks in the U.S. to 16-liters. Defendants reached this agreement knowing that a 16-liter AdBlue tank was insufficient to meet rising U.S. emissions standards. Defendant Audi wrote in an email that a "minimum tank volume of 19 liters" was needed based on "average AdBlue consumption" to comply with U.S. requirements. *Der Spiegel* reports that the Defendants' found it "absolutely necessary to have a 'coordinated approach' with respect to tank sizes."

42.    Defendant Volkswagen was insistent that the agreements on AdBlue tank size were necessary to ensure that U.S. emissions regulators did not scrutinize its emissions control systems. Volkswagen feared that different sized AdBlue tanks would cause U.S. emissions

- 11 -

regulators to question how some companies were getting away with less AdBlue while others needed substantially more solution to clean their emissions.

43.     Volkswagen knew that it could still pass U.S. emissions testing with a 16-liter tank because it had designed a work around that enabled its vehicles to pass emissions testing without adequately sized AdBlue tanks.

44.     This work around is commonly referred to as a "defeat device" and is at the heart of Volkswagen's 2015 NOx defeat device scandal that is now well-known. Volkswagen and its subsidiaries installed software in Volkswagen, Audi, and Porsche vehicles that could sense when the car was being tested and make emission control adjustments so that the vehicle dispersed fewer emissions during testing than on the road.

45.     The Defendants acknowledged internally, these discussions concerning their respective emissions control technology likely were in violation of the antitrust laws. In an email written by a Volkswagen manager, he noted that Daimler "had its legal advisers examine the issue" and "[t]he law firm that was hired expressed considerable concerns that problems could arise if a competitor did in fact file a complaint." The Defendants' managers who participated in these meetings repeatedly recognized that their agreements could be illegal.  One of the working groups involved in the discussions regarding emissions controls, removed the last two pages of a September 2011 presentation, which related to the development of a special sensor. The page was removed because an email from a Daimler employee stated, "[a] review of the document with the legal department led to serious concerns in terms of cartel law."

46.     The illegality of these discussions was discussed at a meeting of one of the working groups in Bayreuth, Germany on September 14 (unknown year). According to a memo summarizing the meeting, the BMW representative asked: "[w]ho would be interested in proving

that we are in violation of cartel law?" The Daimler representative responded: "[m]ainly the exchange supervisory authority." He added that Daimler had also engaged "outside auditors who have access to everything." Another participant said: "Our agreement that a sensor needs to be developed is not the critical issue, but the joint definition of the supplier is."

47.    As the world now knows, Volkswagen pleaded guilty to using this defeat device software to lie and mislead the United States Environmental Protection Agency ("EPA") and U.S. consumers regarding the environmental friendliness of their "clean" vehicles. Volkswagen paid over $20 billion in civil and criminal penalties for deploying the "defeat device" to cheat emissions compliance regulations, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2672 CRB; *United States v. Volkswagen AG*, No. 16-cr-20394(E.D. Mich. 2016).

48.    Defendants discussions and agreements regarding AdBlue and emissions control technology, were but a small part of the Defendants' conspiracy. The Defendants reached agreements with respect to virtually every aspect of their respective vehicles, including, but not limited to, brake systems, seating systems, chassis, and suspension systems.

**B.    Government Investigations into Price-Fixing in the German Premium Vehicles Industry**

49.    On July 22, 2017, the European Commission announced that it was investigating allegations of an antitrust cartel among a group of major German Premium Vehicle manufacturers including Defendants Volkswagen and its subsidiaries, Audi and Porsche, Daimler, and its subsidiaries Mercedes-Benz and Smart, and BMW. The EC issued a statement

stating, "[t]he European Commission and the Bundeskartellamt have received information on this matter, which is currently being assessed by the Commission."[7]

50.     European antitrust officials, the European Commission and its German counterpart, the Bundeskartellamt, have all confirmed that they received information from the Defendants that may relate to the operation of an antitrust cartel dating back as early as the 1990s.

51.     As part of its investigation, the European Commission has already confiscated documents from the Defendants and interviewed witnesses in connection with the alleged cartel.

52.     According to Volkswagen's admissions to German antitrust officials, Defendants entered into potentially unlawful agreements regarding "vehicle development, brakes, petrol and diesel engines, clutches and transmissions as well as exhaust treatment systems."

53.     According to reports, Volkswagen and Daimler have both come forward to European regulators admitting participation in an antitrust conspiracy in exchange for leniency. Daimler has reportedly obtained leniency while Volkswagen is purportedly eligible for a reduction in fines in exchange for its cooperation.

54.     The United States Department of Justice's Antitrust Division announced on July 25, 2017 that it is also investigating the matter.[8]

## C.     Defendants are Recidivist Violators of U.S Laws

55.     In recent years, the automotive industry has been rattled by a wave of scandals involving various schemes by major automobile manufacturers to evade U.S. laws.

---

[7]     https://www.reuters.com/article/us-eu-autos-cartel-idUSKBN1A70EW. (last visited July 28, 2017).

[8]     https://www.bloomberg.com/news/articles/2017-07-25/u-s-is-said-to-review-allegations-german-carmakers-colluded (last visited July 28, 2017).

56.    Defendants Volkswagen and Daimler are recidivist offenders. In 2015, Volkswagen admitted that it cheated diesel emissions tests, and was the target of regulatory investigations in multiple countries, including the United States. In the United States alone, Volkswagen paid more than $20 billion in criminal penalties and civil restitution.

57.    In 2016, European truck makers MAN, Daimler, DAF, Iveco, and Volvo-Renault were revealed to be involved in a truck price-fixing scandal. All except Volkswagen-owned MAN paid record fines, which Volkswagen avoided paying by being the first participant in the illegal cartel to bring the unlawful conduct to regulators' attention. Daimler paid over $1 billion in fines to the EC for its role in this price-fixing conspiracy.

## VI.    THE STATUTES OF LIMITATIONS DOES NOT BAR PLAINTIFF'S CLAIMS

### A.    Plaintiff Did Not and Could Not Have Discovered Defendants' Anticompetitive Conduct

58.    Plaintiff and the members of the Class had neither actual nor constructive knowledge of the facts constituting their claim for relief. Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until July 21, 2017, when, the German publication *Der Spiegel* reported that Volkswagen disclosed participation in antitrust violations resulting from coordination with German Premium Vehicle Manufacturers about the development of their vehicles, costs, suppliers and strategies for controlling emissions in diesel engines from at least the 1990s to the present day.

59.    Defendants' anticompetitive conspiracy, by its very nature, was self-concealing. Plaintiff reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' German Premium Vehicle prices before July 21, 2017.

60.     Plaintiff exercised reasonable diligence. Plaintiff and the members of the Class could not have discovered the alleged conspiracy before July 21, 2017 by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and all of their co-conspirators to conceal their combination.

## B.    Defendants Actively Concealed The Conspiracy

61.     Throughout the Class Period set forth in this Complaint, Defendants and their Co-Conspirators effectively, affirmatively, and fraudulently concealed their unlawful combination and conspiracy from Plaintiff and the Class members.

62.     The combination and conspiracy alleged herein was fraudulently concealed by Defendants by various means and methods, including, but not limited to secret meetings, surreptitious communications between Defendants by the use of the telephone or in-person meetings at trade association meetings (and elsewhere).  Throughout the course of the conspiracy, the Defendants secretly met at least 1,000 times to communicate, and ultimately coordinate, about various facets of the German Luxury Vehicles industry, including technology, costs, supplies, markets, and emissions equipment. The Defendants surreptitious meetings successfully concealed the decades long conspiracy as reflected by the fact that it did not become public until July 21, 2017.

63.     During the relevant period, Defendants affirmatively made numerous misleading public statements falsely portraying the market for German Premium Vehicle as a competitive one. For example, in Volkswagen's 2016 Annual Report, Volkswagen falsely described competition between it and other German Premium Vehicle manufacturers as "fierce."

64.     Further, throughout the Class Period, Defendants misleadingly and falsely touted their commitment to compliance with the antitrust laws or competition laws. For example, in Daimler's 2016 Annual Report, Daimler stated:

- 16 -

Our Group-wide antitrust compliance program is oriented to national and international standards. The program establishes a binding, globally valid Daimler standard that defines how matters of competition law are to be assessed. The Daimler standard is based on the strict standards of the European antitrust authorities and courts. Its existence ensures a uniform level of compliance and advice in all countries.

65.     By virtue of the fraudulent concealment of their wrongful conduct by Defendants and all of their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims and rights of action that Plaintiff and the other Class members have as a result of the unlawful combination and conspiracy alleged in this Complaint

## VII.    CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action on behalf of themselves, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking injunctive relief pursuant to federal law, and damages pursuant to various state antitrust, unfair competition, unjust enrichment, and consumer protection laws of the states listed below on behalf of the members of the following classes:

    A.    **Nationwide Injunctive Relief class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in the United States during the Class Period.

    B.    **Arizona class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Arizona during the Class Period.

    C.    **Arkansas class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Arkansas during the Class Period.

    D.    **California class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in California during the Class Period.

    E.    **District of Columbia class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in the District of Columbia during the Class Period.

- 17 -

F.    **Florida class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Florida during the Class Period.

G.    **Hawaii class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Hawaii during the Class Period.

H.    **Illinois class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Illinois during the Class Period.

I.    **Iowa class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Iowa during the Class Period.

J.    **Kansas class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Kansas during the Class Period.

K.    **Maine class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Maine during the Class Period.

L.    **Massachusetts class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Massachusetts during the Class Period.

M.    **Michigan class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Michigan during the Class Period.

N.    **Minnesota class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Minnesota during the Class Period.

O.    **Mississippi class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Mississippi during the Class Period.

P.    **Missouri class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Missouri during the Class Period.

Q.    **Montana class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Montana during the Class Period.

R.    **Nebraska class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Nebraska during the Class Period.

S.    **Nevada class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Nevada during the Class Period.

T.    **New Hampshire class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in New Hampshire during the Class Period.

U.    **New Mexico class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in New Mexico during the Class Period.

V.    **New York class:** All persons and who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in New York during the Class Period.

W.    **North Carolina class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in North Carolina during the Class Period.

X.    **North Dakota class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in North Dakota during the Class Period.

Y.    **Oregon class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Oregon during the Class Period.

Z.    **Rhode Island class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Rhode Island during the Class Period.

AA.   **South Carolina class:** All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in South Carolina during the Class Period.

BB.  **South Dakota class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in South Dakota during the Class Period.

CC.  **Tennessee class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Tennessee during the Class Period.

DD.  **Utah class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Utah during the Class Period.

EE.  **Vermont class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Vermont during the Class Period.

FF.  **West Virginia**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in West Virginia during the Class Period.

GG.  **Wisconsin class**: All persons and entities who indirectly purchased a German Premium Vehicle from Defendants or co-conspirators for personal use in Wisconsin during the Class Period.

67.     The State Classes are collectively referred to as the "Classes" unless otherwise indicated. Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from these Classes are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action.

68.     **Class Identity:** The above-defined Classes are readily identifiable and is one for which records should exist.

69.     **Numerosity:** Plaintiff does not know the exact number of class members because such information presently is in the exclusive control of Defendants or other third parties, such as

010703-11 975216 V1

the dealers of Defendants' vehicles. Plaintiff believes that due to the nature of the trade and commerce involved, there are tens of thousands of class members geographically dispersed throughout the United States, such that joinder of all class members is impracticable.

70.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes because Plaintiff purchased a German Premium Vehicle indirectly from one or more of the Defendants for personal use, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the Classes and the relief sought is common to the Classes.

71.    **Common Questions Predominate:** There are questions of law and fact common to the Classes, including, but not limited to:

A.    Whether Defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of German Premium Vehicle sold in interstate commerce in the United States;

B.    The identity of the participants of the alleged conspiracy;

C.    The duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

D.    Whether the alleged conspiracy violated the antitrust and consumer protection laws of the various states;

E.    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiff and the other members of the Classes;

F.    The effect of Defendants' alleged conspiracy on the prices of German Premium Vehicles sold in the United States during the Class Period;

G.    Whether Plaintiff and other members of the Classes are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief; and

H.    The appropriate class-wide measure of damages.

These and other questions of law or fact, which are common to the members of the Classes, predominate over any questions affecting only individual members of the Classes.

72.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Classes in that Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Classes who indirectly purchased a German Premium Vehicle from Defendants and Plaintiff has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Classes.

73.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Classes is impractical. Prosecution as a class action will eliminate the possibility of duplicative litigation. The relatively small damages suffered by individual members of the Classes compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Classes to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

74.    The prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

75.    Plaintiff brings the Classes on behalf of all persons similarly situated pursuant to Rule 23, on behalf of all persons and entities that, as residents of various states, indirectly

purchased one or more German Premium Vehicle for personal use during the respective Class Periods.

76.    Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

## VIII.   ANTITRUST INJURY

77.    Defendants' anticompetitive conduct had the following effects, among others:

A.    Price competition has been restrained or eliminated with respect to German Premium Vehicles;

B.    The prices of German Premium Vehicles have been fixed, raised, stabilized, or maintained at artificially inflated levels;

C.    Indirect purchasers of German Premium Vehicles have been deprived of free and open competition; and

D.    End-user consumers of German Premium Vehicles who indirectly purchased German Premium Vehicles for personal use, including Plaintiff, paid artificially inflated prices;

78.    The German Premium Vehicles that Plaintiff and Class Members purchased were in substantially the same form as when they were initially sold by Defendants. As a result, the German Premium Vehicles follow a traceable physical chain from Defendants to the Plaintiff and class members, and the overcharges on German Premium Vehicles can be traced from Defendants to Plaintiff and class members.

79.    As a matter of economic principle, firms must recover the short-run variable costs of production when they price their products for the market, which ultimately get passed to consumers in the form of higher retail prices. For a firm to be a profitable valid concern, the firm must recover its marginal cost of production. In a perfectly competitive market, firms price at

marginal cost and when marginal costs increase, the cost increases are passed through to the consumer 1:1 or at a 100 percent pass through rate. As a general matter, the pass through rate will be determined by the relative elasticities of supply and demand. When demand is inelastic (as it likely is for German Premium Vehicles), the pass-through rate to end users is at or near 100 percent.

80.     Consequently, while the direct purchasers were the first to pay supra-competitive prices, all or most of the overcharge was passed along the distribution chain and absorbed by Plaintiff and Class Members when they purchased the German Premium Vehicles for personal use.

81.     Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution to end-user consumers. Thus, the economic harm to Plaintiff and the class members can be quantified.

82.     The purpose of the conspiratorial conduct of the Defendants and their con-conspirators was to raise, fix, or maintain the price of German Premium Vehicles and, as a direct and foreseeable result. Plaintiff and the Classes paid supracompetitive prices for German Premium Vehicles during the Class Period.

83.     By reason of the alleged violations of the antitrust laws, Plaintiff and the Classes have sustained injury to their businesses or property, having paid higher prices for German Premium Vehicles than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and as a result have suffered damages.

84.     This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

- 24 -

# IX.    VIOLATION OF THE SHERMAN ACT

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### 15 U.S.C. § 1
### (On Behalf of Nationwide Class for Injunctive and Equitable Relief)

85.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

86.    Beginning at a time currently unknown to Plaintiff, but at least as early as January 1, 1990, and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade which ha the effect of artificially fixing, raising, and/or stabilizing prices for German Premium Vehicle in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

87.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above.

88.    The combination and conspiracy alleged herein has had the following effects, among others:

    A.  Price competition in the sale of German Premium Vehicle has been restrained, suppressed, and/or eliminated in the United States;

    B.  Prices for German Premium Vehicle sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

C.  Those who purchased German Premium Vehicles indirectly from Defendants and their coconspirators for their personal use have been deprived of the benefits of free and open competition.

89.    Plaintiff and members of the Classes have been injured and will continue to be injured in their businesses and property by paying more for German Premium Vehicles purchased indirectly from the Defendants and their co-conspirators for their personal use than they would have paid and will pay in the absence of the combination and conspiracy.

90.    Plaintiff and members of the Classes are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## X.    VIOLATIONS OF STATE ANTITRUST LAWS

91.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

92.    The following Second through Twenty-Seventh Claims for Relief are pleaded under the antitrust laws of each State or jurisdiction identified below, on behalf of the indicated class.

### SECOND CLAIM FOR RELIEF
**Violation of Arizona's Uniform State Antitrust Act,**
**Ariz. Rev. Stat. § 44-1401, *et seq***
**(On Behalf of the Arizona Class)**

93.    Plaintiff incorporates and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

94.    By reason of the conduct alleged herein, Defendants have violated Arizona Rev. Stat. § 44-1401, *et seq*.

95.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicle market, a substantial part of which occurred within Arizona.

- 26 -

96. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicle market, a substantial part of which occurred within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicle market.

97. Defendants' violations of Arizona law were flagrant.

98. Defendants' unlawful conduct substantially affected Arizona's trade and commerce.

99. As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the Arizona Class have been injured in their business or property and are threatened with further injury.

100. By reason of the foregoing, Plaintiff and members of the Arizona Class are entitled to seek all forms of relief available under Arizona Revised Statute § 44-1401, *et seq*.

**THIRD CLAIM FOR RELIEF**
**Violation of the Arkansas Unfair Practices Act,**
**Ark. Code Ann. § 4-75-201, et seq. and § 4-75-301, *et seq*.**
**(On Behalf of the Arkansas Class)**

101. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

102. By reason of the conduct alleged herein, Defendants have violated Ark. Code Ann. § 4-75-201, *et seq*. and § 4-75-301, *et seq*.

103. Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicle market, a substantial part of which occurred within Arkansas.

104. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles markets, a substantial part

of which occurred within Arkansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicle market.

105.    Defendants' violations of Arkansas law were flagrant.

106.    Defendants' unlawful conduct substantially affected Arkansas's trade and commerce.

107.    Defendants' unlawful conduct caused injury, and as a result, Plaintiff and the members of the Arkansas Class have been damaged in their business or property and are threatened with further damages.

108.    By reason of the foregoing, Plaintiff and members of the Arkansas Class are entitled to seek all forms of relief, including treble damages, reasonable attorney's fees and costs, and injunctive relief available under Ark. Code Ann. § 4-75-211.

<div align="center">

**FOURTH CLAIM FOR RELIEF**
**Violation of California's Cartwright Act,**
**Cal. Bus. & Prof. Code § 16700, *et seq*.**
**(On Behalf of the California Class)**

</div>

109.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

110.    The California Business & Professions Code generally governs conduct of corporate entities. The Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, governs antitrust violations in California.

111.    California policy is that "vigorous representation and protection of consumer interests are essential to the fair and efficient functioning of a free enterprise market economy," including by fostering competition in the marketplace. Cal. Bus. & Prof. Code § 301.

112.    Under the Cartwright Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Cal. Bus. & Prof. Code § 16750(a).

<div align="center">- 28 -</div>

113.    A trust in California is any combination intended for various purposes, including but not limited to creating or carrying out restrictions in trade or commerce, limiting or reducing the production or increasing the price of merchandise, or preventing competition in the market for a commodity. Cal. Bus. & Prof. Code § 16720. Every trust in California is unlawful except as provided by the Code. *Id.* at § 16726.

114.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

115.    Defendants enacted a combination of capital, skill or acts for the purpose of creating and carrying out restrictions in trade or commerce, in violation of Cal. Bus. & Prof. Code § 16700, *et seq.*

116.    Plaintiff and members of the Class were injured in their business or property, with respect to purchases of German Premium Vehicles in California and are entitled to all forms of relief, including recovery of treble damages, interest, and injunctive relief, plus reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### Violation of the District of Columbia Antitrust Act,
### D.C. Code § 28-4501, *et seq.*
### (On Behalf of the District of Columbia Class)

117.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

118.    The policy of District of Columbia Code, Title 28, Chapter 45 (Restraints of Trade) is to "promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic practices."

119.    Plaintiff purchased German Premium Vehicles within the District of Columbia during the Class Period. But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

120.    Under District of Columbia law, indirect purchasers have standing to maintain an action under the antitrust provisions of the D.C. Code based on the facts alleged in this Complaint, because "any indirect purchaser in the chain of manufacture, production or distribution of goods...shall be deemed to be injured within the meaning of this chapter." D.C. Code § 28-4509(a).

121.    Defendants contracted, combined or conspired to act in restraint of trade within the District of Columbia, and monopolized or attempted to monopolize the market for German Premium Vehicles within the District of Columbia, in violation of D.C. Code § 28-4501, *et seq.*

122.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in the District of Columbia and are entitled to all forms of relief, including actual damages, treble damages, and interest, reasonable attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF
**Violation of the Illinois Antitrust Act,**
**740 Ill. Comp. Stat. Ann. 10/3(1), et seq.**
**(On Behalf of the Illinois Class)**

123.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

124.    The Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*, aims "to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade. . . ." 740 ILCS 10/2.

- 30 -

125.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

126.    Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 ILCS 10/7(2).

127.    Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing, controlling or maintaining prices for German Premium Vehicles sold, and/or for allocating customers or markets for German Premium Vehicles within the intrastate commerce of Illinois.

128.    Defendants further unreasonably restrained trade or commerce and established, maintained or attempted to acquire monopoly power over the market for German Premium Vehicles in Illinois for the purpose of excluding competition, in violation of 740 ILCS 10/1, et seq.

129.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Illinois and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs.

**SEVENTH CLAIM FOR RELIEF**
**Violation of the Iowa Competition Law**
**Iowa Code § 553.1, et seq.**
**(On Behalf of the Iowa Class)**

130.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

131.    The Iowa Competition Law aims to "prohibit[] restraint of economic activity and monopolistic practices." Iowa Code § 553.2.

010703-11 975216 V1

132.     But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

133.     Defendants contracted, combined or conspired to restrain or monopolize trade in the market for German Premium Vehicles, and attempted to establish or did in fact establish a monopoly for the purpose of excluding competition or controlling, fixing or maintaining prices for German Premium Vehicles, in violation of Iowa Code § 553.1, *et seq.*

134.     Plaintiff and members of the Iowa Class were injured with respect to purchases of German Premium Vehicles in Iowa, and are entitled to all forms of relief, including actual damages, exemplary damages for willful conduct, reasonable attorneys' fees and costs, and injunctive relief.

<div align="center">

**EIGHTH CLAIM FOR RELIEF**
**Violation of the Kansas Restraint of Trade Act**
**Kan. Stat. Ann. § 50-101, et seq.**
**(On Behalf of the Kansas Class)**

</div>

135.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

136.     The Kansas Restraint of Trade Act aims to prohibit practices which, *inter alia*, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state." Kan. Stat. Ann. § 50-112.

137.     But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

138.     Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Kan. Stat. Ann § 50-161(b).

139.     Defendants combined capital, skill or acts for the purposes of creating restrictions in trade or commerce of German Premium Vehicles, increasing the price of German Premium

<div align="center">- 32 -</div>

Vehicles, preventing competition in the sale of German Premium Vehicles, or binding themselves not to sell German Premium Vehicles, in a manner that established the price of German Premium Vehicles and precluded free and unrestricted competition among themselves in the sale of German Premium Vehicles, in violation of Kan. Stat. Ann. § 50-101, et seq.

140.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Kansas and are entitled to all forms of relief, including actual damages, reasonable attorneys' fees and costs, and injunctive relief.

<div align="center">

**NINTH CLAIM FOR RELIEF**
**Violation of the Maine's Antitrust Statute**
**Me. Rev. Stat. Ann. Tit. 10 § 1101, et seq.**
**(On Behalf of the Maine Class)**

</div>

141.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

142.    Part 3 of Title 10 the Maine Revised Statutes generally governs regulation of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. Me. Rev. Stat. Ann. Tit. 10, §§ 1101-02.

143.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

144.    Under Maine law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Me. Rev. Stat. Ann. Tit. 10, § 1104(1).

145.    Defendants contracted, combined or conspired in restraint of trade or commerce of German Premium Vehicles within the intrastate commerce of Maine, and monopolized or attempted to monopolize the trade or commerce of German Premium Vehicles within the intrastate commerce of Maine, in violation of Me. Rev. Stat. Ann. Tit. 10, § 1101, et seq.

<div align="center">

- 33 -

</div>

146.     Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Maine and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' and experts' fees and costs.

**TENTH CLAIM FOR RELIEF**
**Violation of the Michigan Antitrust Reform Act**
**Mich. Comp. Laws § 445.771, et seq.**
**(On Behalf of the Michigan Class)**

147.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

148.     The Michigan Antitrust Reform Act aims "to prohibit contracts, combinations, and conspiracies in restraint of trade or commerce...to prohibit monopolies and attempts to monopolize trade or commerce...[and] to provide remedies, fines, and penalties for violations of this act." Mich. Act 274 of 1984.

149.     But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

150.     Under the Michigan Antitrust Reform Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Mich. Comp. Laws. § 452.778(2).

151.     Defendants contracted, combined or conspired to restrain or monopolize trade or commerce in the market for German Premium Vehicles, in violation of Mich. Comp. Laws § 445.772, *et seq.*

152.     Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Michigan and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief.

- 34 -

## ELEVENTH CLAIM FOR RELIEF
### Violation of the Minnesota Antitrust Law,
### Minn. Stat. § 325D.49, et seq.
### (On Behalf of the Minnesota Class)

153.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

154.    The Minnesota Antitrust Law of 1971 aims to prohibit any contract, combination or conspiracy when any part thereof was created, formed, or entered into in Minnesota; any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain or use monopoly power, whenever any of these affect Minnesota trade or commerce.

155.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

156.    Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Minn. Stat. § 325D.56.

157.    Defendants contracted, combined or conspired in unreasonable restraint of trade or commerce in the market for German Premium Vehicles within the intrastate commerce of and outside of Minnesota; established, maintained, used or attempted to establish, maintain or use monopoly power over the trade or commerce in the market for German Premium Vehicles within the intrastate commerce of and outside of Minnesota; and fixed prices and allocated markets for German Premium Vehicles within the intrastate commerce of and outside of Minnesota, in violation of Minn. Stat. § 325D.49, *et seq*.

158.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Minnesota and are entitled to all forms of relief, including actual

- 35 -

damages, treble damages, costs and disbursements, reasonable attorneys' fees, and injunctive

relief necessary to prevent and restrain violations hereof.

### TWELVTH CLAIM FOR RELIEF
**Violation of the Mississippi Antitrust Statute,**
**Miss. Code Ann. § 74-21-1, et seq.**
**(On Behalf of the Mississippi Class)**

159.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

160.    Title 75 of the Mississippi Code regulates trade, commerce and investments.

Chapter 21 thereof generally prohibits trusts and combines in restraint or hindrance of trade, with

the aim that "trusts and combines may be suppressed, and the benefits arising from competition

in business [are] preserved" to Mississippians. Miss. Code Ann. § 75-21-39.

161.    Trusts are combinations, contracts, understandings or agreements, express or

implied, when inimical to the public welfare and with the effect of, *inter alia*, restraining trade,

increasing the price or output of a commodity, or hindering competition in the production or sale

of a commodity. Miss. Code Ann. § 75-21-1.

162.    But for Defendants' conduct set forth herein, the price of Defendants' German

Premium Vehicle would have been lower, in an amount to be determined at trial.

163.    Under Mississippi law, indirect purchasers have standing to maintain an action

under the antitrust provisions of the Mississippi Code based on the facts alleged in this

Complaint. Miss. Code Ann. § 75-21-9.

164.    Defendants combined, contracted, understood and agreed in the market for

German Premium Vehicles, in a manner inimical to public welfare, with the effect of restraining

trade, increasing the price of German Premium Vehicles and hindering competition in the sale of

German Premium Vehicles, in violation of Miss. Code Ann. § 75-21-1(a), et seq.

- 36 -

165.    Defendants monopolized or attempted to monopolize the production, control or sale of German Premium Vehicles, in violation of Miss. Code Ann. § 75-21-3, et seq.

166.    During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

167.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Mississippi and are entitled to all forms of relief, including actual damages and a penalty of $500 per instance of injury.

### THIRTEENTH CLAIM FOR RELIEF
**Violation of the Missouri Merchandising Practices Act,
Mo. Ann. Stat. § 407.010, et seq.
(On Behalf of the Missouri Class)**

168.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

169.    Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

170.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

171.    Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA based on the facts alleged in this Complaint. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007).

172.    Defendants contracted, combined or conspired in restraint of trade or commerce of German German Premium Vehicles within the intrastate commerce of Missouri, and monopolized or attempted to monopolize the market for German Premium Vehicles within the intrastate commerce of Missouri by possessing monopoly power in the market and willfully

- 37 -

maintaining that power through agreements to fix prices, allocate markets and otherwise control

trade, in violation of Mo. Ann. Stat. § 407.010, et seq.

173.    Plaintiff and members of the Missouri Class were injured with respect to

purchases of German Premium Vehicles in Missouri and are entitled to all forms of relief,

including actual damages or liquidated damages in an amount which bears a reasonable relation

to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs,

and injunctive relief.

<div align="center">

**FOURTEENTH CLAIM FOR RELIEF**
**Violation of the Nebraska Junkin Act,**
**Neb. Rev. Stat. § 59-801, et seq.**
**(On Behalf of the Nebraska Class)**

</div>

174.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

175.    Chapter 59 of the Nebraska Revised Statute generally governs business and trade

practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust

violations such as restraints of trade and monopolization.

176.    But for Defendants' conduct set forth herein, the price of Defendants' German

Premium Vehicles would have been lower, in an amount to be determined at trial.

177.    Under Nebraska law, indirect purchasers have standing to maintain an action

under the Junkin Act based on the facts alleged in this Complaint. Neb. Rev. Stat. § 59-821.

178.    Defendants contracted, combined or conspired in restraint of trade or commerce

of German Premium Vehicles within the intrastate commerce of Nebraska, and monopolized or

attempted to monopolize the market for German Premium Vehicles within the intrastate

commerce of Nebraska by possessing monopoly power in the market and willfully maintaining

that power through agreements to fix prices, allocate markets and otherwise control trade, in violation of Neb. Rev. Stat. § 59-801, et seq.

179.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Nebraska and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

<div align="center">

**FIFTEENTH CLAIM FOR RELIEF**
**Violation of the Nevada Unfair Trade Practices Act,**
**Nev. Rev. Stat. § 598A.010, et seq.**
**(On Behalf of the Nevada Class)**

</div>

180.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

181.    The Nevada Unfair Trade Practice Act ("NUTPA") states that "free, open and competitive production and sale of commodities...is necessary to the economic well-being of the citizens of the State of Nevada." Nev. Rev. Stat. Ann. § 598A.030(1).

182.    The policy of NUTPA is to prohibit acts in restraint of trade or commerce, to preserve and protect the free, open and competitive market, and to penalize all persons engaged in anticompetitive practices. Nev. Rev. Stat. Ann. § 598A.030(2). Such acts include, *inter alia*, price fixing, division of markets, allocation of customers, and monopolization of trade. Nev. Rev. Stat. Ann. § 598A.060.

183.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

184.    Under Nevada law, indirect purchasers have standing to maintain an action under NUTPA based on the facts alleged in this Complaint. Nev. Rev. Stat. Ann. §598A.210(2).

<div align="center">- 39 -</div>

185.    Defendants fixed prices by agreeing to establish prices for German Premium Vehicles in Nevada, divided Nevada markets, allocated Nevada customers, and monopolized or attempted monopolize trade or commerce of German Premium Vehicles within the intrastate commerce of Nevada, constituting a contract, combination or conspiracy in restraint of trade in violation of Nev. Rev. Stat. Ann. § 598A, et seq.

186.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Nevada in that at least thousands of sales of Defendants' German Premium Vehicles took place in Nevada, purchased by Nevada consumers at supra-competitive prices caused by Defendants' conduct.

187.    Accordingly, Plaintiff and members of the Nevada Class are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

188.    In accordance with the requirements of § 598A.210(3), notice of this action was mailed to the Nevada Attorney General by Plaintiffs.

## SIXTEENTH CLAIM FOR RELIEF
**Violation of New Hampshire's Antitrust Statute,**
**N.H. Rev. Stat. Ann. Tit. XXXI, § 356, et seq.**
**(On Behalf of the New Hampshire Class)**

189.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

190.    Title XXXI of the New Hampshire Statutes generally governs trade and commerce. Chapter 356 thereof governs combinations and monopolies and prohibits restraints of trade. N.H. Rev. Stat. Ann. §§ 356:2, 3.

191.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

- 40 -

192.    Under New Hampshire law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

193.    Defendants fixed, controlled or maintained prices for German Premium Vehicles, allocated customers or markets for German Premium Vehicles, and established, maintained or used monopoly power, or attempted to, constituting a contract, combination or conspiracy in restraint of trade in violation of N.H. Rev. Stat. Ann. § 356:1, *et seq.*

194.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in New Hampshire and are entitled to all forms of relief, including actual damages sustained, treble damages for willful or flagrant violations, reasonable attorneys' fees, costs, and injunctive relief.

<div align="center">

**SEVENTEENTH CLAIM FOR RELIEF**
**Violation of the New Mexico Antitrust Act,**
**N.M. Stat. Ann. §§ 57-1-1, et seq.**
**(On Behalf of the New Mexico Class)**

</div>

195.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

196.    The New Mexico Antitrust Act aims to prohibit restraints of trade and monopolistic practices. N.M. Stat. Ann. 57-1-15.

197.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

198.    Under New Mexico law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.M. Stat. Ann. § 57-1-3.

199.    Defendants contracted, agreed, combined or conspired, and monopolized or attempted to monopolize trade for German Premium Vehicles within the intrastate commerce of New Mexico, in violation of N.M. Stat. Ann. § 57-1-1, *et seq.*

200.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in New Mexico and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

<div align="center">

**EIGHTEENTH CLAIM FOR RELIEF**
**Violation of Section 340 of the New York General Business Law**
**(On Behalf of the New York Class)**

</div>

201.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

202.    Article 22 of the New York General Business Law general prohibits monopolies and contracts or agreements in restraint of trade, with the policy of encouraging competition or the free exercise of any activity in the conduct of any business, trade or commerce in New York. N.Y. Gen. Bus. Law § 340(1).

203.    Plaintiff purchased a German Premium Vehicle within the State of New York during the Class Period. But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

204.    Under New York law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.Y. Gen. Bus. Law § 340(6).

205.    Defendants established or maintained a monopoly within the intrastate commerce of New York for the trade or commerce of German Premium Vehicles and restrained competition in the free exercise of the conduct of the business of German Premium Vehicles within the intrastate commerce of New York, in violation of N.Y. Gen. Bus. Law § 340, *et seq.*

206.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in New York and are entitled to all forms of relief, including actual damages, treble damages, costs not exceeding $10,000, and reasonable attorneys' fees.

<div align="center">- 42 -</div>

## NINETEENTH CLAIM FOR RELIEF
### Violation of the North Carolina General Statutes,
### N.C. Gen. Stat. § 75-1, et seq.
### (On Behalf of the North Carolina Class)

207.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

208.    Defendants entered into a contract or combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the German Premium Vehicle Market, a substantial part of which occurred within North Carolina.

209.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicle Market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred within North Carolina.

210.    Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

211.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

212.    By reason of the foregoing, Plaintiff and members of the North Carolina Class are entitled to seek all forms of relief available, including treble damages, under N.C. Gen. Stat. § 75-1, *et seq.*

## TWENTIETH CLAIM FOR RELIEF
### Violation of the North Dakota Uniform State Antitrust Act,
### N.D. Cent. Code § 51-08.1, et seq.
### (On Behalf of the North Dakota Class)

213.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

214.    The North Dakota Uniform State Antitrust Act generally prohibits restraints on or monopolization of trade. N.D. Cent. Code § 51-08.1, *et seq.*

215.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicle would have been lower, in an amount to be determined at trial.

216.    Under the North Dakota Uniform State Antitrust Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.D. Cent. Code § 51-08.1-08.

217.    Defendants contracted, combined or conspired in restraint of, or to monopolize trade or commerce in the market for German Premium Vehicle, and established, maintained, or used a monopoly, or attempted to do so, for the purposes of excluding competition or controlling, fixing or maintaining prices for German Premium Vehicle, in violation of N.D. Cent. Code §§ 51-08.1-02, 03.

218.    Plaintiff and members of the Class were injured with respect to purchases in North Dakota and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, costs, reasonable attorneys' fees, and injunctive or other equitable relief.

### TWENTY-FIRST CLAIM FOR RELIEF
**Violation of the Oregon Antitrust Law,**
**Or. Rev. Stat. § 646.705, et seq.**
**(On Behalf of the Oregon Class)**

219.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

220.    Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 899 thereof govern antitrust violations, with the

- 44 -

policy to "encourage free and open competition in the interest of the general welfare and economy of the state." Or. Rev. Stat. § 646.715.

221.    But for Defendants' conduct set forth herein, the price per pound of German Premium Vehicles would have been lower, in an amount to be determined at trial.

222.    Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in this Complaint. Or. Rev. Stat. § 646.780(1)(a).

223.    Defendants contracted, combined, or conspired in restraint of trade or commerce of German Premium Vehicles, and monopolized or attempted to monopolize the trade or commerce of German Premium Vehicles, in violation of Or. Rev. Stat. § 646.705, *et seq.*

224.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles within the intrastate commerce of Oregon, or alternatively to interstate commerce involving actual or threatened injury to persons located in Oregon, and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, expert witness fees and investigative costs, and injunctive relief.

## TWENTY-SECOND CLAIM FOR RELIEF
### Violation of the Rhode Island Antitrust Act,
### R.I. Gen Laws § 6-36-1, et seq.
### (On Behalf of the Rhode Island Class)

225.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

226.    The Rhode Island Antitrust Act aims to promote the unhampered growth of commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade and monopolistic practices that hamper, prevent or decrease competition. R.I. Gen. Laws § 636-2(a)(2).

- 45 -

227.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

228.    Under the Rhode Island Antitrust Act, as of January 1, 2008, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. R.I. Gen. Laws § 6-36-11(a). In Rhode Island, the claims of the Plaintiff and the Class alleged herein run from January 1, 1990, through the date that the effects of Defendants' anticompetitive conduct cease.

229.    Defendants contracted, combined and conspired in restraint of trade of German Premium Vehicles within the intrastate commerce of Rhode Island, and established, maintained or used, or attempted to establish, maintain or use, a monopoly in the trade of German Premium Vehicles for the purpose of excluding competition or controlling, fixing or maintaining prices within the intrastate commerce of Rhode Island, in violation of R.I. Gen. Laws § 6-36-1, et seq.

230.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Rhode Island and are entitled to all forms of relief, including actual damages, treble damages, reasonable costs, reasonable attorneys' fees, and injunctive relief.

### TWENTY-THIRD CLAIM FOR RELIEF
**Violation of the South Dakota Antitrust Statute,**
**S.D. Codified Laws § 37-1-3.1, et seq.**
**(On Behalf of the South Dakota Class)**

231.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

232.    Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade, monopolies and discriminatory trade practices. S.D. Codified Laws §§ 37-1- 3.1, 3.2.

233.    But for Defendants' conduct set forth herein, the price of German Premium Vehicles would have been lower, in an amount to be determined at trial.

- 46 -

234.    Under South Dakota law, indirect purchasers have standing under the antitrust provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in this Complaint. S.D. Codified Laws § 37-1-33.

235.    Defendants contracted, combined or conspired in restraint of trade or commerce of German Premium Vehicles within the intrastate commerce of South Dakota, and monopolized or attempted to monopolize trade or commerce of German Premium Vehicles within the intrastate commerce of South Dakota, in violation of S.D. Codified Laws § 37-1, et seq.

236.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in South Dakota and are entitled to all forms of relief, including actual damages, treble damages, taxable costs, reasonable attorneys' fees, and injunctive or other equitable relief.

## TWENTY-FOURTH CLAIM FOR RELIEF
### Violation of the Tennessee Trade Practices Act,
### Tenn. Code, § 47-25-101, *et seq.*
### (On Behalf of the Tennessee Class)

237.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

238.    The Tennessee Trade Practices Act generally governs commerce and trade in Tennessee, and it prohibits, *inter alia*, all arrangements, contracts, agreements, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in goods in Tennessee. All such arrangements, contracts, agreements, or combinations between persons or corporations designed, or which tend, to increase the prices of any such goods, are against public policy, unlawful, and void. Tenn. Code, § 47-25-101.

- 47 -

239.    Defendants competed unfairly and colluded by meeting to fix prices, divide markets, and otherwise restrain trade as set forth herein, in violation of Tenn. Code, § 47-25-101, *et seq.*

240.    Defendant's conduct violated the Tennessee Trade Practice Act because it was an arrangement, contract, agreement, or combination to lessen full and free competition in goods in Tennessee, and because it tended to increase the prices of goods in Tennessee. Specifically, Defendants' combination or conspiracy had the following effects: (1) price competition for German Premium Vehicles was restrained, suppressed, and eliminated throughout Tennessee; (2) prices for German Premium Vehicles were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and the Tennessee Class were deprived of free and open competition; and (4) Plaintiff and the Tennessee Class paid supra-competitive, artificially inflated prices for German Premium Vehicles.

241.    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce as German Premium Vehicles were sold in Tennessee.

242.    The Tennessee Class purchased German Premium Vehicles within the State of Tennessee during the Class Period. But for Defendants' conduct set forth herein, the price of German Premium Vehicles would have been lower, in an amount to be determined at trial. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Tennessee Class have been injured in their business and property and are threatened with further injury.

243.    Under Tennessee law, indirect purchasers (such as the Tennessee Class) have standing under the Tennessee Trade Practice Acts to maintain an action based on the facts alleged in this Complaint.

244.    Plaintiff and members of the Tennessee Class were injured with respect to purchases of German Premium Vehicles in Tennessee and are entitled to all forms of relief available under the law, including return of the unlawful overcharges that they paid on their purchases, damages, equitable relief, and reasonable attorneys' fees.

<div style="text-align:center">

**TWENTY-FIFTH CLAIM FOR RELIEF**
**Violation of the Utah Antitrust Act,**
**Utah Code Ann. §§ 76-10-911, et seq.**
**(On Behalf of the Utah Class)**

</div>

245.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

246.    The Utah Antitrust Act aims to "encourage free and open competition in the interest of the general welfare and economy of this state by prohibiting monopolistic and unfair trade practices, combinations and conspiracies in restraint of trade or commerce . . . ." Utah Code Ann. § 76-10-3102.

247.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

248.    Under the Utah Antitrust Act, indirect purchasers who are either Utah residents or Utah citizens have standing to maintain an action based on the facts alleged in this Complaint. Utah Code Ann. § 76-10-3109(1)(a).

249.    Defendants contracted, combined or conspired in restraint of trade or commerce of German Premium Vehicles, and monopolized or attempted to monopolize trade or commerce of German Premium Vehicles, in violation of Utah Code Ann. § 76-10-3101, *et seq.*

250.    Plaintiff and members of the Class who are either Utah residents or Utah citizens were injured with respect to purchases of German Premium Vehicles in Utah and are entitled to

<div style="text-align:center">- 49 -</div>

all forms of relief, including actual damages, treble damages, costs of suit, reasonable attorneys'

fees, and injunctive relief.

## TWENTY-SIXTH CLAIM FOR RELIEF
### Violation of the West Virginia Antitrust Act,
### W. Va. Code §47-18-1, et seq.
### (On Behalf of the West Virginia Class)

251.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

252.    The violations of federal antitrust law set forth above also constitute violations of

section 47-18-1 of the West Virginia Code.

253.    During the Class Period, Defendants and their co-conspirators engaged in a

continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce

and other anticompetitive conduct alleged above in violation of W. Va. Code § 47-18-1, *et seq*.

254.    Defendants' anticompetitive acts described above were knowing, willful and

constitute violations or flagrant violations of the West Virginia Antitrust Act.

255.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

members of the West Virginia Class have been injured in their business and property in that they

paid more for German Premium Vehicles than they otherwise would have paid in the absence of

Defendants' unlawful conduct. As a result of Defendants' violation of Section 47-18-3 of the

West Virginia Antitrust Act, Plaintiff and members of the West Virginia Class seek treble

damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 47-18-9

of the West Virginia Code.

## TWENTY-SEVENTH CLAIM FOR RELIEF
### Violation of the Wisconsin Antitrust Act,
### Wis. Stat. Ann. § 133.01(1), et seq.
### (On Behalf of the Wisconsin Class)

- 50 -

256.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

257.    Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

258.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

259.    Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a).

260.    Defendants contracted, combined or conspired in restraint of trade or commerce of German Premium Vehicles, and monopolized or attempted to monopolize the trade or commerce of German Premium Vehicles, with the intention of injuring or destroying competition therein, in violation of Wis. Stat. § 133.01, et seq.

261.    Plaintiff and members of the Class were injured with respect to purchases of German Premium Vehicles in Wisconsin in that the actions alleged herein substantially affected the people of Wisconsin, with at least thousands of consumers in Wisconsin paying substantially higher prices for Defendants' German Premium Vehicles in Wisconsin.

262.    Accordingly, Plaintiff and members of the Class are entitled to all forms of relief, including actual damages, treble damages, costs and reasonable attorneys' fees, and injunctive relief.

263.    Defendants' and their co-conspirators' anticompetitive activities have directly, foreseeably and proximately caused injury to Plaintiff and members of the Classes in the United States. Their injuries consist of: (1) being denied the opportunity to purchase lower-priced German Premium Vehicles from Defendants, and (2) paying higher prices for Defendants' German Premium Vehicles than they would have in the absence of Defendants' conduct. These injuries are of the type of the laws of the above States were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

264.    Defendants are jointly and severally liable for all damages suffered by Plaintiff and members of the Classes.

## XI.    VIOLATIONS OF STATE CONSUMER PROTECTION LAWS

265.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

266.    The following twenty-eighth through fiftieth Claims for Relief are pleaded under the consumer protection or similar laws of each State or jurisdiction identified below, on behalf of the indicated class.

### TWENTY-EIGHTH CLAIM FOR RELIEF
**Violation of the Arkansas Deceptive Trade Practices Act,
Ark. Code Ann. § 4-88-101, et seq.
(On Behalf of the Arkansas Class)**

267.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

268.    By reason of the conduct alleged herein, Defendants have violated Ark. Code Ann. § 4-88-101, et seq.

269.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles market, a substantial part of which occurred within Arkansas.

- 52 -

270.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Arkansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

271.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Arkansas.

272.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Classes.

273.    Defendants' unlawful conduct substantially affected Arkansas's trade and commerce.

274.    Defendants' conduct was willful.

275.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the members of the Arkansas Class have been injured in their business or property and are threatened with further injury.

276.    By reason of the foregoing, Plaintiff and members of the Arkansas Class are entitled to seek all forms of relief, including actual damages plus reasonable attorney's fees under Ark. Code Ann. § 4-88-113.

<div style="text-align:center">

**TWENTY-NINTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, et seq. (the "UCL")**
**(On Behalf of the California Class)**

</div>

277.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

278.    The violations of federal antitrust law set forth above also constitute violations of section 17200, *et seq.* of California Business and Professions Code.

<div style="text-align:center">- 53 -</div>

279.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

280.    This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

281.    The Defendants' conduct as alleged herein violated the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the violations of section 16720, *et seq.*, of California Business and Professions Code, set forth above.

282.    Defendants' acts, omissions, misrepresentations, practices, and non- disclosures, as described above, whether or not in violation of section 16720, *et seq.*, of California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

283.    Plaintiff and members of the California Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

284.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

285.    The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the California

Class to pay supra-competitive and artificially-inflated prices for German Premium Vehicles sold in the State of California. Plaintiff and the members of the California Class suffered injury in fact and lost money or property as a result of such unfair competition.

286.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the California Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

**THIRTIETH CLAIM FOR RELIEF**
**Violation of the District of Columbia Consumer Protection Procedures Act,**
**D.C. Code § 28-3901, et seq.**
**(On Behalf of the District of Columbia Class)**

287.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

288.    Members of the District of Columbia Class purchased German Premium Vehicles for personal, family, or household purposes.

289.    By reason of the conduct alleged herein, Defendants have violated D.C. Code § 28-3901*, et seq.*

290.    Defendants are "merchants" within the meaning of D.C. Code § 28- 3901(a)(3).

291.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles market, a substantial part of which occurred within the District of Columbia.

292.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred

- 55 -

On

within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

293.    Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the District of Columbia.

294.    Defendants' unlawful conduct substantially affected the District of Columbia's trade and commerce.

295.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the District of Columbia Class have been injured in their business or property and are threatened with further injury.

296.    By reason of the foregoing, Plaintiff and members of the District of Columbia Class are entitled to seek all forms of relief, including treble damages or $1500 per violation (whichever is greater) plus punitive damages, reasonable attorney's fees and costs under D.C. Code § 28-3901, *et seq.*

<div align="center">

**THIRTY-FIRST CLAIM FOR RELIEF**
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. § 501.201(2), et seq.**
**(On Behalf of the Florida Class)**

</div>

297.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

298.    The Florida Deceptive & Unfair Trade Practices Act, Florida Stat. §§ 501.201, *et seq.* (the *FDUTPA*), generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. Florida Stat. § 501.204(1).

299.    The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. § 501.202(2).

300.    A claim for damages under the FDUTPA has three elements: (1) a prohibited practice; (2) causation; and (3) actual damages.

301.    Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this Complaint. Fla. Stat. § 501.211(a) ("...anyone aggrieved by a violation of this [statute] may bring an action...").

302.    But for Defendants' conduct set forth herein, the price of Defendants' German Premium Vehicles would have been lower, in an amount to be determined at trial.

303.    Defendants entered into a contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles market, a substantial part of which occurred within Florida.

304.    Defendants established, maintained or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for German Premium Vehicles, for the purpose of excluding competition or controlling, fixing or maintaining prices in Florida at a level higher than the competitive market level, beginning at least as early as 1990 and continuing through the date of this filing.

305.    Accordingly, Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

306.    Defendants' unlawful conduct substantially affected Florida's trade and commerce.

- 57 -

307.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the members of the Florida Class have been injured in their business or property by virtue of overcharges for German Premium Vehicles and are threatened with further injury.

308.     By reason of the foregoing, Plaintiff and the members of the Florida Class is entitled to seek all forms of relief, including injunctive relief pursuant to Florida Stat. §501.208 and declaratory judgment, actual damages, reasonable attorneys' fees and costs pursuant to Florida Stat. § 501.211.

<div align="center">

**THIRTY-SECOND CLAIM FOR RELIEF**
**Violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.**
**(On Behalf of Hawaii Class)**

</div>

309.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

310.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

311.     Defendants' unlawful conduct had the following effects: (1) German Premium Vehicles price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) German Premium Vehicles prices were, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Members of the Hawaii Class were deprived of free and open competition; and (4) Members of the Hawaii Class paid supracompetitive, artificially inflated prices for German Premium Vehicles.

312.     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

313.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

<div align="center">

**THIRTY-THIRD CLAIM FOR RELIEF**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 Ill. Comp. Stat. Ann. 505/10a, et seq.**
**(On Behalf of the Illinois Class)**

</div>

314.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

315.    By reason of the conduct alleged herein, Defendants have violated 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.*

316.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles market, a substantial part of which occurred within Illinois.

317.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

318.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Illinois.

319.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Classes.

320.    Defendants' unlawful conduct substantially affected Illinois's trade and commerce.

321.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the Illinois Class were actually deceived and have been injured in their business or property and are threatened with further injury.

322.    By reason of the foregoing, Plaintiff and members of the Illinois Class are entitled to seek all forms of relief, including actual damages or any other relief the Court deems proper under 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*

<div align="center">

**THIRTY-FOURTH CLAIM FOR RELIEF**
**Violation of the Massachusetts Consumer Protection Act,**
**Mass. Gen. Laws Ch. 93A § 1, et seq.**
**(On Behalf of the Massachusetts Class)**

</div>

323.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

324.    By reason of the conduct alleged herein, Defendants have violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A § 2, *et seq.*

325.    But for Defendants' conduct set forth herein, the price per pound of German Premium Vehicles would have been lower, in an amount to be determined at trial.

326.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles market, a substantial part of which occurred within Massachusetts.

327.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for German Premium Vehicles, a substantial part of which occurred within Massachusetts, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicles market.

328.    Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Massachusetts

010703-11 975216 V1

329.    Defendants' unlawful conduct substantially affected Massachusetts' trade and commerce.

330.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Massachusetts Class have been injured in their business or property and are threatened with further injury.

331.    By reason of the foregoing, the Plaintiff and the Massachusetts Class are entitled to seek all forms of relief, including up to treble damages and reasonable attorney's fees and costs under Mass. Gen. Laws Ch. 93A § 9.

332.    Pursuant to Mass. Gen. Laws Ch. 93A § 9, Plaintiff alleges he will be mailing to all Defendants, via certified mail, return receipt requested, Demand for Payment Letters which will explain the unfair acts, the injury suffered, and requested relief from the Defendants.

## THIRTY-FIFTH CLAIM FOR RELIEF
### Violation of the Michigan Consumer Protection Act,
### Mich. Comp. Laws Ann. § 445.901, et seq.
### (On Behalf of the Michigan Class)

333.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

334.    By reason of the conduct alleged herein, Defendants have violated Mich. Comp. Laws Ann. § 445.901, et seq.

335.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within Michigan.

336.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, for the purpose of

excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Michigan.

337.    Defendants' conduct was conducted with the intent to deceive Michigan consumers regarding the nature of Defendants' actions within the stream of Michigan commerce.

338.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Michigan.

339.    Defendants' conduct misled consumers, withheld material facts, and took advantage of Plaintiff and members-of-the-Classes' inability to protect themselves.

340.    Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

341.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the Michigan Class have been injured in their business or property and are threatened with further injury.

342.    By reason of the foregoing, the Plaintiff and the Michigan Class are entitled to seek all forms of relief available under Mich. Comp. Laws Ann. § 445.911.

<div align="center">

**THIRTY-SIXTH CLAIM FOR RELIEF**
**Violation of the Minnesota Consumer Fraud Act,**
**Minn. Stat. § 325F.68, et seq.**
**(On Behalf of the Minnesota Class)**

</div>

343.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

344.    By reason of the conduct alleged herein, Defendants have violated Minn. Stat. § 325F.68, et seq.

345.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

<div align="center">

- 62 -

</div>

346.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within Minnesota, for the purpose of controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

347.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Minnesota.

348.    Defendants' conduct, specifically in the form of fraudulent concealment of their horizontal agreement, created a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

349.    Defendants' unlawful conduct substantially affected Minnesota's trade and commerce.

350.    Defendants' conduct was willful.

351.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Minnesota Class have been injured in their business or property and are threatened with further injury.

352.    By reason of the foregoing, the Plaintiff and the members of the Minnesota Class are entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs under Minn. Stat. § 325F.68, et seq. and applicable case law.

### THIRTY- SEVENTH CLAIM FOR RELIEF
**Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq*., and §§ 30-14-201, *et. seq.*
(On Behalf of the Montana Class)**

353.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

354.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*

355.    Defendants' unlawful conduct had the following effects: (1) German Premium Vehicle price competition was restrained, suppressed, and eliminated throughout Montana; (2) German Premium Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Montana Class were deprived of free and open competition; and (4) Members of the Montana Class paid supracompetitive, artificially inflated prices for German Premium Vehicles.

356.    During the Class Period, defendants' illegal conduct substantially affected Montana commerce and consumers.

357.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*, and, accordingly, Plaintiff and members of the Montana Class seek all relief available under that statute.

### THIRTY-EIGHTH CLAIM FOR RELIEF
**Violation of the Nebraska Consumer Protection Act,**
**Neb. Rev. Stat. § 59-1602, et seq.**
**(On Behalf of the Nebraska Class)**

358.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

359.    By reason of the conduct alleged herein, Defendants have violated Neb. Rev. Stat. § 59-1602, *et seq.*

- 64 -

360.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within Nebraska.

361.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Nebraska.

362.    Defendants' conduct was conducted with the intent to deceive Nebraska consumers regarding the nature of Defendants' actions within the stream of Nebraska commerce.

363.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nebraska.

364.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff and members-of-the-Classes' ability to protect themselves.

365.    Defendants' unlawful conduct substantially affected Nebraska's trade and commerce.

366.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Nebraska Class have been injured in their business or property and are threatened with further injury.

367.    By reason of the foregoing, Plaintiff and members of the Nebraska Class are entitled to seek all forms of relief available under Neb. Rev. Stat. § 59- 1614.

**THIRTY-NINTH CLAIM FOR RELIEF**
**Violation of the Nevada Deceptive Trade Practices Act,**
**Nev. Rev. Stat. § 598.0903, et seq.**
**(On Behalf of the Nevada Class)**

368.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

369.    By reason of the conduct alleged herein, Defendants have violated Nev. Rev. Stat. § 598.0903, *et seq.*

370.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and to substantially lessen competition.

371.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within Nevada, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

372.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nevada.

373.    Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

374.    Defendants' unlawful conduct substantially affected Nevada's trade and commerce.

375.    Defendants' conduct was willful.

376.    As a direct and proximate cause of Defendants' unlawful conduct, the members of the Nevada Class have been injured in their business or property and are threatened with further injury.

377.    By reason of the foregoing, the Nevada Class is entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs, and a civil penalty of up to $5,000 per violation under Nev. Rev. Stat. § 598.0993.

**FORTIETH CLAIM FOR RELIEF**
**Violation of the New Hampshire Consumer Protection Act,**
**N.H. Rev. Stat. Ann. Tit. XXXI, § 358-A, et seq.**
**(On Behalf of the New Hampshire Class)**

378.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

379.     By reason of the conduct alleged herein, Defendants have violated N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq*.

380.     Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within New Hampshire.

381.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within New Hampshire.

382.     Defendants' conduct was conducted with the intent to deceive New Hampshire consumers regarding the nature of Defendants' actions within the stream of New Hampshire commerce.

383.     Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire.

384.     Defendants' conduct was willful and knowing.

385.     Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiffs and members-of-the-Classes' ability to protect themselves.

386.     Defendants' unlawful conduct substantially affected New Hampshire's trade and commerce.

- 67 -

387.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the New Hampshire Class have been injured in their business or property and are threatened with further injury.

388.    By reason of the foregoing, the Plaintiff and the members of the New Hampshire Class are entitled to seek all forms of relief available under N.H. Rev. Stat. Ann. tit. XXXI, §§ 358-A:10 and 358-A:10-a.

<div align="center">

**FORTY-FIRST CLAIM FOR RELIEF**
**Violation of the New Mexico Unfair Practices Act,**
**N.M. Stat. Ann. §§ 57-12-3, et seq.**
**(On Behalf of the New Mexico Class)**

</div>

389.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

390.    By reason of the conduct alleged herein, Defendants have violated N.M. Stat. Ann. §§ 57-12-3, *et seq.*

391.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles market, a substantial part of which occurred within New Mexico.

392.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within New Mexico, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

393.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of New Mexico.

394.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

<div align="center">- 68 -</div>

395.    Defendants' unlawful conduct substantially affected New Mexico's trade and commerce.

396.    Defendants' conduct constituted "unconscionable trade practices" in that such conduct, inter alia, resulted in a gross disparity between the value received by the New Mexico class members and the price paid by them for German Premium Vehicles as set forth in N.M. Stat. Ann. § 57-12-2E.

397.    Defendants' conduct was willful.

398.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the New Mexico Class have been injured in their business or property and are threatened with further injury.

399.    By reason of the foregoing, Plaintiff and members of the New Mexico Class are entitled to seek all forms of relief, including actual damages or up to $300 per violation, whichever is greater, plus reasonable attorney's fees under N.M. Stat. Ann. §§ 57-12-10.

### FORTY-SECOND CLAIM FOR RELIEF
**Violation of the North Carolina Unfair Trade and Business Practices Act,
N.C. Gen. Stat. § 75-1.1, et seq.
(On Behalf of the North Carolina Class)**

400.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

401.    By reason of the conduct alleged herein, Defendants have violated N.C. Gen. Stat. § 75-1.1, *et seq.*

402.    Defendants entered into a contract, combination, or conspiracy in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within North Carolina.

- 69 -

403.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

404.    Defendants' trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

405.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

406.    Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

407.    Defendants' conduct constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

408.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

409.    By reason of the foregoing, the Plaintiff and the members of the North Carolina Class are entitled to seek all forms of relief, including treble damages under N.C. Gen. Stat. § 75-16.

<div align="center">

**FORTY-THIRD CLAIM FOR RELIEF**
**Violation of the North Dakota Unfair Trade Practices Law,**
**N.D. Cent. Code § 51-10, et seq.**
**(On Behalf of the North Dakota Class)**

</div>

410.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

<div align="center">

- 70 -

</div>

411.    By reason of the conduct alleged herein, Defendants have violated N.D. Cent. Code § 51-10-01, et seq.

412.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

413.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within North Dakota, for the purpose of controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

414.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Dakota.

415.    Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

416.    Defendants' unlawful conduct substantially affected North Dakota's trade and commerce.

417.    Defendants' conduct was willful.

418.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the North Dakota Class have been injured in their business or property and are threatened with further injury.

419.    By reason of the foregoing, the Plaintiff and the members of the North Dakota Class are entitled to seek all forms of relief, including damages and injunctive relief under N.D. Cent. Code § 51-10-06.

**FORTY-FOURTH CLAIM FOR RELIEF**
**Violation of the Oregon Unlawful Trade Practices Act,**
**Or. Rev. Stat. § 646.605, et seq.**
**(On Behalf of the Oregon Class)**

- 71 -

420.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

421.    By reason of the conduct alleged herein, Defendants have violated Or. Rev. Stat. § 646.608, *et seq.*

422.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within Oregon.

423.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Oregon.

424.    Defendants' conduct was conducted with the intent to deceive Oregon consumers regarding the nature of Defendants' actions within the stream of Oregon commerce.

425.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Oregon.

426.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff's and members-of-the-Classes' ability to protect themselves.

427.    Defendants' unlawful conduct substantially affected Oregon's trade and commerce.

428.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Oregon Class have been injured in their business or property and are threatened with further injury.

- 72 -

429.    By reason of the foregoing, the Plaintiff and the members of the Oregon Class are entitled to seek all forms of relief available under Or. Rev. Stat. § 646.638.

430.    Pursuant to section 646.638 of the Oregon Unlawful Trade Practices Act, with the filing of this action, a copy of this Complaint is being served upon the Attorney General of Oregon.

<div align="center">

**FORTY-FIFTH CLAIM FOR RELIEF**
**Violation of the Rhode Island Deceptive Trade Practices Act,**
**R.I. Gen. Laws § 6-13.1-1, et seq.**
**(On Behalf of the Rhode Island Class)**

</div>

431.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

432.    By reason of the conduct alleged herein, Defendants have violated R.I. Gen Laws § 6-13.1-1, *et seq.*

433.    Defendants engaged in an unfair or deceptive act or practice with the intent to injure competitors and consumers through supra-competitive profits.

434.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within Rhode Island, for the purpose of controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

435.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Rhode Island.

436.    Defendants' conduct amounted to an unfair or deceptive act or practice committed by a supplier in connection with a consumer transaction.

437.    Defendants' unlawful conduct substantially affected Rhode Island's trade and commerce.

010703-11 975216 V1

438.    Defendants' conduct was willful.

439.    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Rhode Island Class concerning Defendants' unlawful activities, including the horizontal conspiracy and artificially-inflated prices for German Premium Vehicles.

440.    Defendants' deception, including its affirmative misrepresentations and/or omissions concerning the price of German Premium Vehicles, constitutes information necessary to Plaintiffs and members of the Rhode Island Class relating to the cost of German Premium Vehicles purchased.

441.    Plaintiff and members of the Rhode Island class purchased goods, namely German Premium Vehicles, primarily for personal, family, or household purposes.

442.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Rhode Island Class have been injured in their business or property and are threatened with further injury.

443.    By reason of the foregoing, Plaintiff and the members of the Rhode Island Class are entitled to seek all forms of relief, including actual damages or $200 per violation, whichever is greater, and injunctive relief and punitive damages under R.I. Gen Laws § 6-13.1-5.2.

### FORTY-SIXTH CLAIM FOR RELIEF
**Violation of the South Carolina's Unfair Trade Practices Act,
S.C. Code Ann. §§ 39-5-10, *et seq*.
(On Behalf of the South Carolina Class)**

444.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

445.    By reason of the conduct alleged herein, Defendants have violated S.C. Code Ann. §§ 39-5-10.

- 74 -

446.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within Oregon.

447.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within South Carolina.

448.    Defendants' conduct was conducted with the intent to deceive South Carolina consumers regarding the nature of Defendants' actions within the stream of South Carolina commerce.

449.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of South Carolina.

450.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff's and members-of-the-Classes' ability to protect themselves.

451.    Defendants' unlawful conduct substantially affected South Carolina trade and commerce.

452.    Defendants' unlawful conduct substantially harmed the public interest of the State of South Carolina, as a large number of South Carolinians purchased German Premium Vehicles.

### FORTY-SEVENTH CLAIM FOR RELIEF
**Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37-24, *et seq.*
(On Behalf of the South Dakota Class)**

453.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

- 75 -

454.    By reason of the conduct alleged herein, Defendants have violated S.D. Codified Laws § 37-24-6.

455.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

456.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within South Dakota, for the purpose of controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

457.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of South Dakota.

458.    Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

459.    Defendants' unlawful conduct substantially affected South Dakota's trade and commerce.

460.    Defendants' conduct was willful.

461.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the South Dakota Class have been injured in their business or property and are threatened with further injury.

462.    By reason of the foregoing, Plaintiff and the members of the South Dakota Class are entitled to seek all forms of relief, including actual damages and injunctive relief under S.D. Codified Laws § 37-24-31.

## FORTY-EIGHTH CLAIM FOR RELIEF
**Violation of the Utah Consumer Sales Practices Act,**
**Utah Code Ann. §§ 13-11-1, et seq.**
**(On Behalf of the Utah Class)**

010703-11 975216 V1

463.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

464.     By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-11-1, *et seq.*

465.     Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles market, a substantial part of which occurred within Utah.

466.     Defendants are suppliers within the meaning of Utah Code Ann. §§ 13-11-3.

467.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicles Market, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicles Market.

468.     Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Utah.

469.     Defendants' conduct and/or practices were unconscionable and were undertaken in connection with consumer transactions.

470.     Defendants knew or had reason to know that their conduct was unconscionable.

471.     Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff's and members of the Class.

472.     Defendants' unlawful conduct substantially affected Utah's trade and commerce.

473.     As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Utah Class have been injured in their business or property and are threatened with further injury.

474.    By reason of the foregoing, the Plaintiff and the members of the Utah Class are entitled to seek all forms of relief, including declaratory judgment, injunctive relief, and ancillary relief, pursuant to Utah Code Ann. §§ 13-11-19(5) and 13-11-20.

<div align="center">

**FORTY-NINTH CLAIM FOR RELIEF**
**Violation of the Utah Unfair Practices Act,**
**Utah Code All. §§ 13-5-1, et seq.**
**(On Behalf of the Utah Class)**

</div>

475.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

476.    By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-5-1, *et seq*.

477.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Premium Vehicles market, a substantial part of which occurred within Utah.

478.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Premium Vehicle Market, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Premium Vehicle Market.

479.    Defendants' conduct caused or was intended to cause unfair methods of competition within the State of Utah.

480.    Defendants' unlawful conduct substantially affected Utah's trade and commerce.

481.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Utah Class have been injured in their business or property and are threatened with further injury.

- 78 -

010703-11 975216 V1

482.    By reason of the foregoing, the Plaintiff and the members of the Utah Class are entitled to seek all forms of relief, including actual damages or $2000 per Utah Class member, whichever is greater, plus reasonable attorney's fees under Utah Code Ann. §§ 13-5-14, et seq.

**FIFTIETH CLAIM FOR RELIEF**
**Violation of the Vermont Consumer Fraud Act,**
**Vt. Stat. Ann. Tit. 9, §§ 2453, et seq.**
**(On Behalf of the Vermont Class)**

483.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

484.    Title 9 of the Vermont Statutes generally governs commerce and trade in Vermont. Chapter 63 thereof governs consumer protection and prohibits, *inter alia*, unfair methods competition, unfair and deceptive acts and practices, and antitrust violations such as restraints of trade and monopolization. Vt. Stat. Ann. Tit. 9 § 2453(a).

485.    One such unfair method of competition is through collusion, defined as agreeing, contracting, combining or conspiring to engage in price fixing, market division and/or allocation of goods, constituting unfair competition in the commerce of German Premium Vehicles. Vt. Stat. Ann. Tit. 9, § 2451a(h).

486.    But for Defendants' conduct set forth herein, the price per pound of German Premium Vehicles would have been lower, in an amount to be determined at trial.

487.    Under Vermont law, indirect purchasers have standing under the antitrust provisions of the Vermont Statutes to maintain an action based on the facts alleged in this Complaint. Vt. Stat. Ann. Tit. 9, § 2465(b).

488.    Defendants competed unfairly and colluded by meeting to fix prices, divide markets, and otherwise restrain trade as set forth herein, in violation of Vt. Stat. Ann. Tit. 9, § 2453, *et seq.*

- 79 -

489.    Plaintiff and members of the Classes were injured with respect to purchases of German Premium Vehicles in Vermont and are entitled to all forms of relief, including actual damages, treble damages, and reasonable attorneys' fees.

## XII.    FIFTY-FIRST CLAIM FOR RELIEF UNJUST ENRICHMENT

490.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

491.    As a result of their unlawful conduct described above, Defendants have and will continued to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits of German Premium Vehicles.

492.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred on them by overpayments by Plaintiff and members of the Classes in the following states: Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

## XIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes of all others so similarly situated, respectfully requests judgment against Defendants as follows:

A.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once certified;

B.      The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed in violation of Section 1 of the Sherman Act and listed state antitrust laws, unfair competition laws, state consumer protection laws, and common law;

C.      Plaintiff and the Class recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgment in favor of Plaintiff and the members of the Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

E.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits individual identification of company's information;

F.      Plaintiff and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

G.      Plaintiff and the members of the Classes recover their costs of suit, including

reasonable attorneys' fees, as provided by law; and

E.      Plaintiff and the members of the Classes have such other and further relief as the

case may require and the Court may deem just and proper.

## XIV.   JURY TRIAL DEMANDED

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.

Dated: July 31, 2017.                          Respectfully submitted,

                                               **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                               By: */s/ Jason A. Zweig*                          `
                                                   Jason A, Zweig (JZ-8107)
                                               555 Fifth Avenue, Suite 1700
                                               New York, NY 10017
                                               Telephone: (212) 752-5455
                                               Facsimile: (917) 210-3980
                                               E-mail: jasonz@hbsslaw.com

                                               Steve W. Berman
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               1918 Eighth Avenue, Suite 3300
                                               Seattle, Washington 98101
                                               Telephone: (206) 623-7292
                                               Facsimile: (206) 623-0594
                                               E-mail: steve@hbsslaw.com

                                               Jeff D. Friedman
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               715 Hearst Avenue, Suite 202
                                               Berkeley, California 94710
                                               Telephone: (510) 725-3000
                                               Facsimile: (510) 725-3001
                                               E-mail: Jefff@hbsslaw.com